# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BLAINE COLEMAN,

    Plaintiff,

vs.

ANN ARBOR TRANSPORTATION
AUTHORITY, MICHAEL FORD,
TRANSIT ADVERTISING GROUP AA,
and RANDY ORAM,

    Defendants.

Case No.

Hon.

_____/

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union Fund
  of Michigan
2966 Woodward Avenue
Detroit, Michigan 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Attorneys for Plaintiff

_____/

# **VERIFIED COMPLAINT**

## INTRODUCTION

1. If the First Amendment means anything, it means that the government may not censor political expression based on the content or viewpoint of the speaker's message.

2. Plaintiff Blaine Coleman wishes to purchase advertising space on the side of a public bus in Ann Arbor, Michigan to advocate the boycott of Israel because of its policies toward Palestinians.

3. The advertisement would say "Boycott Israel, Boycott Apartheid."

4. The Ann Arbor Transportation Authority ("AATA") refuses to run Mr. Coleman's advertisement, citing an advertising policy that is unconstitutional on its face and as applied.

5. Mr. Coleman's message may be controversial, but that is a reason it must be protected by the First Amendment, not censored. Those who are offended by speech they don't like may—and should—use the First Amendment to speak back. It is not the role of the government to prohibit offensive speech.

6. Mr. Coleman therefore requests that the court order AATA to run his ad. The court should also declare AATA's policy unconstitutional and award damages.

## JURISDICTION AND VENUE

7. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this is a civil action arising under the Constitution and laws of the United States seeking redress for the deprivation, under color of state law, of a right secured by the Constitution of the United States.

8. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the plaintiff's claim occurred within the Eastern District of Michigan.

## PARTIES

9. Plaintiff Blaine Coleman is a resident of Washtenaw County.

10. Defendant Ann Arbor Transportation Authority ("AATA") is a unit of government that operates the local public transit system for the greater Ann Arbor-Ypsilanti area.

11. Defendant Michael Ford is Chief Operating Officer of AATA.

12. Defendant Transit Advertising Group AA ("TAG") is a private entity doing business in Michigan. TAG is AATA's agent for ad sales and placement on AATA buses. TAG acts jointly and in concert with AATA to implement AATA's advertising policy.

13. Defendant Randy Oram is President of TAG.

## FACTS

### Summary of Allegations

14. Blaine Coleman is an Ann Arbor resident and activist who is committed to raising awareness about how Palestinians are treated by Israel.

15. Mr. Coleman wishes to purchase advertising space on the outside of an AATA bus for an ad that reads "Boycott Israel, Boycott Apartheid."

16. For years, AATA buses have carried a wide array of advertisements, including ads with messages about important social issues, ads promoting religion, and even ads supporting candidates running for public office.

17. However, AATA refuses to run Mr. Coleman's ad.

18. AATA refuses to run the ad because of its content.

### Background: Activism and Advocacy Regarding Israel and Palestine

19. Mr. Coleman is one of many Americans who have strong political opinions about Israel and Palestine. He is neither the first nor the last such person to express his views about this issue in a variety of public forums.

20.     Indeed, the relationship between the Israeli government and the Palestinian people is a subject of grave importance in international politics.  It is often the subject of fierce debate at the United Nations.  In the United States, candidates for public office frequently discuss their support of Israel and whether they support Palestinian statehood.

21.     Americans are generally more supportive of Israel than the Palestinians.  According to a 2011 Gallup poll, 68 percent of Americans say they have favorable views toward Israel and 63 percent say they sympathize more with Israelis than with Palestinians.

22.     However, it is also the case that some people and organizations criticize the Israeli government for its policies toward Palestinians.

23.     For example, in December 2010, Human Rights Watch issued a report entitled "Separate and Unequal: Israel's Discriminatory Treatment of Palestinians in the Occupied Palestinian Territories."  The report states that the Israeli government is responsible for a "two-tier system of laws, rules, and services" in the West Bank and East Jerusalem.  It alleges that "[s]uch different treatment, on the basis of race, ethnicity, and national origin and not narrowly tailored to meet security or other justifiable goals, violates the fundamental prohibition against discrimination under human rights law."

24.     Some critics of the Israeli government's policies use the word "apartheid" to describe conditions there.

25.     "Apartheid" is an Afrikaans word and a common description of South African policies of racial segregation during the twentieth century.

26.     Former President Jimmy Carter and South African Archbishop Desmond Tutu have both drawn analogies between apartheid in South Africa and conditions in Palestine.

27. Inspired in part by a successful boycott movement against South Africa during the 1980s and 1990s, some critics of the Israeli government's policies toward Palestinians now urge a boycott of Israel in some form.

28. Using the term "apartheid" to describe how Palestinians are treated by Israel is contentious. Many people are offended by the comparison and are opposed to any form of boycott against Israel.

29. Supporters of Israel frequently speak out on this important political issue. The Human Rights Watch report was widely criticized, as were President Carter and Desmond Tutu for using the word "apartheid" in connection with Israel.

30. As with any high-profile political issue, many organizations and interest groups have launched media and public awareness campaigns to express a range of views and opinions about the Israeli-Palestinian conflict. For example, a pro-Israel organization called the Emergency Committee for Israel recently began purchasing advertising space in newspapers and billboards criticizing President Obama for not being sufficiently supportive of Israel.

31. Meanwhile, those who support a boycott of Israel also express their views in public forums. For example, an organization called the Committee for a Just Peace in Israel and Palestine expresses its message by purchasing advertising space in public transportation areas. Ads stating "End U.S. military aid to Israel" have appeared on the side and rear panels of public buses in Chicago and Portland, in subway stations in New York and Boston, and inside subway cars in Washington, D.C.

### AATA's Refusal To Run Blaine Coleman's Ad

32. Mr. Coleman also wishes to raise awareness about the treatment of Palestinians by purchasing ad space on the exterior of public buses to advocate for a boycott of Israel.

33. In Ann Arbor, AATA buses travel on and near the campus of the University of Michigan, where students are likely to be inquisitive about international relations, human rights, and political activism.

34. AATA buses regularly display ads on their exterior rear and side panels.

35. These exterior bus ads represent a unique opportunity to express one's message of choice because the ad is essentially a moving billboard seen by thousands of drivers and pedestrians who cross paths with the bus.

36. According to the "Top 10 Reasons to Advertise on AATA Buses!" featured on defendant TAG's website, the "unique environment of bus advertising allows for endless creative possibilities."

37. Mr. Coleman first contacted defendants in late December 2010, requesting via email information about how to purchase advertising space for the outside of an AATA bus. He requested a copy of any rules regarding the bus ads. He also asked how much it would cost to purchase an ad on the side or back of the bus that runs along State Street, South University, and North University on and near the University of Michigan campus in Ann Arbor.

38. No one responded to Mr. Coleman's email response. He sent several more emails in January requesting the same information, and he included a copy of the ad he wishes to run on the side or back of an AATA bus.

39. Mr. Coleman's ad is reproduced as Attachment #1 to this complaint.

40. The ad features the following message in large, bold print:

> Boycott "Israel"
>
> Boycott Apartheid

41. The ad also contains a cartoonish black-and-white image that depicts a skeleton-like figure holding a skull in its right hand and a bone in its left.

42. In February 2011, defendant Randy Oram emailed Mr. Coleman and identified himself as the president of the company that handles advertising for AATA buses.  Mr. Oram requested that all communications regarding placing an advertisement on an AATA bus be directed exclusively to him.

43. Mr. Oram's email stated that he could not post Mr. Coleman's ad because it was prohibited by AATA advertising policy.

### AATA's Advertising Policy and Practice

44. AATA's advertising policy states:

> The AATA, by permitting commercial advertising in or on its vehicles, shelters, information material, buildings, and benches, does not thereby intend to create a public forum.  Further, AATA requires that such advertising comply with specified standards to further the purposes of providing revenue for AATA, increasing ridership, and assuring that AATA riders will be afforded a safe and pleasant environment.  AATA reserves the right to approve all advertising, exhibit material, announcements, or any other display and their manner of presentation.  All advertising must be considered in good taste and shall uphold the aesthetic standards as determined by AATA.
>
> Advertising in or on AATA vehicles, in AATA shelters, buildings, benches or informational material which does any of the following shall be prohibited.
>
> 1. Contains false, misleading, or deceptive material.
>
> 2. Promotes an illegal activity.
>
> 3. Advocates violence or crime.
>
> 4. Infringes copyright, service mark, title or slogan.
>
> 5. Defames or is likely to hold up to scorn or ridicule a person or group of persons.

      6. States or implies the endorsement of a product or service by AATA.

      7. Supports or opposes the election of any person to office or supports or opposes any ballot proposition.

      8. Contains material which is obscene, as defined by MCL 752.362, or sexually explicit, as defined by MCL 722.673, and as such statutes shall be amended or supplemented.

      9. Promotes alcohol or tobacco products.

45. Mr. Oram did not identify which of the above provisions allegedly prohibited Mr. Coleman's ad.

46. Upon information and belief, AATA almost never rejects advertisements for failure to comply with its advertising policy.

47. In fact, directly contrary to its written advertising policy, AATA runs political campaign ads. In 2008, AATA ran political campaign advertisements supporting Joan Lowenstein and Margaret Conners for district court judge.

48. AATA ads contain a wide variety of messages. AATA buses carry ads selling commercial products, conveying information about important social issues, advocating the election of a candidate for public office, and spreading religious gospel.

49. For example, in the past few years AATA has run advertisements with the following messages:

- "Every 9 ½ minutes someone in the U.S. is infected with HIV."
- "Two-Faced Landlords Can Be Stopped. Housing Discrimination Is Against the Law."
- "Domestic Violence. It happens here."
- "In Washtenaw County black babies are 3x more likely to die than white babies."
- "Breastfeeding makes babies smarter."

- An ad for NorthRidge Church that reads: "NorthRidge Church is For Hypocrites. NorthRidge Church is For Fakes. NorthRidge Church is For Liars. NorthRidge Church is For Losers."

- 2WordStory.com, a website featuring the stories of people who "experienced the life changing love and grace of Jesus Christ."

- "Joan Lowenstein for Ann Arbor's 15th District Court Judge: a voice of reason."

### AATA Reaffirms the Decision To Reject Mr. Coleman's Ad

50.   In August 2011, Mr. Coleman's ACLU attorneys wrote a letter to AATA's board of directors and defendant Ford on Mr. Coleman's behalf.  The letter warned AATA its advertising policy was unconstitutional and that its refusal to run Mr. Coleman's ad violated his right to free speech under the First Amendment and due process under the Fourteenth Amendment.  The letter cited *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*, 163 F.3d 341 (6th Cir. 1998), holding under similar circumstances that a public transit authority's content-based rejection of a bus ad violated the First and Fourteenth Amendments.  The letter requested that AATA accept Mr. Coleman's advertisement on the same terms and conditions that it accepts all other advertisements.

51.   On November 17, 2011, AATA's board of directors met to consider the ACLU's letter and request regarding Mr. Coleman's advertisement.  By formal resolution, the AATA board "affirm[ed] the . . . decision to reject the advertisement" and "concur[red] with [a] recommendation" of a subcommittee "that the ad continue to be rejected."  In support of its resolution, the AATA board cited the following provisions of its advertising policy:

> The AATA, by permitting commercial advertising in or on its vehicles, shelters, information material, buildings, and benches, does not thereby intend to create a public forum.  Further, AATA requires that such advertising comply with specified standards to further the purposes of providing revenue for AATA, increasing ridership, and assuring that AATA riders will be afforded a safe and pleasant environment.  AATA reserves the right to approve all

9

advertising, exhibit material, announcements, or any other display and their manner of presentation.  All advertising must be considered in good taste and shall uphold the aesthetic standards as determined by AATA.

Advertising in or on AATA vehicles, in AATA shelters, buildings, benches or informational material which does any of the following shall be prohibited.

5. Defames or is likely to hold up to scorn or ridicule a person or group of persons.

## CAUSES OF ACTION

52. Plaintiff's counts and claims against defendants are all brought under 42 U.S.C. § 1983, which provides that every person acting under color of state law who deprives another person of his or her constitutional rights, or causes such a deprivation, is liable at law and in equity.

53. At all times relevant to this complaint, defendants acted and are acting under color of state law.

54. Defendants' refusal to run Mr. Coleman's ad has restricted and continues to restrict Mr. Coleman's ability to convey his political message to the public and to participate in debate on a matter of public concern.  He has suffered and continues to suffer mental anguish and distress from this diminished ability to express his views and from the knowledge that his message has been restrained, censored, and singled out by the government as unwelcome in a public forum.  Defendants' acts and omissions have caused and are causing irreparable harm such that there is no adequate remedy at law.

## COUNT ONE

## VIOLATION OF THE FIRST AMENDMENT

## DISCRIMINATION ON THE BASIS OF CONTENT AND VIEWPOINT

55. Defendants' refusal to accept plaintiff's ad has violated and continues to violate his First Amendment right to freedom of speech and expression.

56. Defendants operate a designated public forum. They have unconstitutionally discriminated against plaintiff, and continue to do so, based on the content of his advertisement.

57. Alternatively, defendants operate a limited or nonpublic forum. They have unconstitutionally discriminated against plaintiff, and continue to do so, based on the viewpoint expressed in his advertisement.

## COUNT TWO

## VIOLATION OF THE FIRST AMENDMENT

## FACIAL CHALLENGE — OVERBREADTH

58. Defendants' advertising policy is facially unconstitutional under the overbreadth doctrine of the First Amendment.

59. Defendants operate a designated public forum and its policy discriminates or allows for discrimination based on content.

60. Alternatively, defendants operate a limited or nonpublic forum and its policy discriminates or allows for discrimination based on viewpoint.

## COUNT THREE

## VIOLATION OF THE FOURTEENTH AMENDMENT

## VAGUENESS AS APPLIED

61. Defendants' refusal to accept plaintiff's ad has violated and continues to violate his Fourteenth Amendment right to due process.

62. The criteria defendants used and are using to prohibit plaintiff's ad are not clearly defined such that a person of ordinary intelligence can readily determine whether the ad is allowable or prohibited.

63. Defendants and their agents have exercised and are exercising unbridled discretion to prohibit plaintiff's ad, unconstrained by sufficiently objective criteria, such that their exclusion of plaintiff's ad rests on ambiguous and subjective reasons.

## COUNT FOUR

## VIOLATION OF THE FOURTEENTH AMENDMENT

## FACIAL CHALLENGE — VAGUENESS

64. Defendants' advertising policy is facially unconstitutional under the vagueness doctrine of the Fourteenth Amendment.

65. Defendants' advertising policy is not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion or exclusion.

66. The absence of clear standards in defendants' advertising policy grants defendants and their agents unbridled discretion, not constrained by objective criteria, such that their exclusion of advertising content may rest on ambiguous and subjective reasons.

**RELIEF REQUESTED**

Plaintiff requests that the court:

a. assert jurisdiction over this matter;

b. declare that defendants have violated and are violating plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

c. declare that defendants' advertising policy is facially unconstitutional under the First and Fourteenth Amendments to the United States Constitution;

d. grant plaintiff temporary, preliminary, and permanent injunctive relief ordering defendants to accept and display plaintiff's advertisement on terms no less favorable than those given to other advertisers;

e. grant plaintiff temporary, preliminary, and permanent injunctive relief ordering defendants not to enforce or apply AATA's advertising policy;

f. award plaintiff damages;

g. award plaintiff costs and a reasonable attorney's fee under 42 U.S.C. § 1988; and

h. grant any other relief the court deems appropriate.

                                      Respectfully submitted,

                                      /s/ Daniel S. Korobkin
                                      Daniel S. Korobkin (P72842)
                                      Michael J. Steinberg (P43085)
                                      Kary L. Moss (P49759)
                                      American Civil Liberties Union Fund
                                        of Michigan
                                      2966 Woodward Avenue
                                      Detroit, Michigan 48201
                                      (313) 578-6824
                                      dkorobkin@aclumich.org
                                      msteinberg@aclumich.org

Dated: November 28, 2011