UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLAINE COLEMAN,

      Plaintiff,

                               Civil Action No. 11-CV-15207

vs.                                 HON. MARK A. GOLDSMITH

ANN ARBOR TRANSPORTATION
AUTHORITY, et al.,

      Defendants.

_____/

**OPINION AND ORDER DENYING FURTHER PRELIMINARY INJUNCTIVE RELIEF**

## I.  INTRODUCTION

In this First Amendment case, Plaintiff Blaine Coleman challenges the bus advertising policy of Defendant Ann Arbor Transportation Authority (AATA) and the rejection, under that policy, of his proposed ad, which is critical of Israel.  He filed a motion for a preliminary injunction and/or temporary restraining order (Dkt. 3), arguing that the policy – which required that ads be "in good taste" and not likely to subject any "group of persons" to "scorn or ridicule" – was unconstitutional.  The Court issued an Opinion and Order ("the initial Opinion") (Dkt. 59), in which it agreed that the policy was, in part, unconstitutional.  However, the Court ordered additional briefing on what specific injunctive relief should be awarded, including whether AATA should be required to run the ad, or ordered to reconsider the ad under a revised policy that is constitutionally sound.  AATA subsequently revised its advertising policy, by deleting the constitutionally offensive "good taste" provision and by adding a provision barring "political ads" – a provision identical to one expressly held to be constitutional by the United States Court

1

of Appeals for the Sixth Circuit in a bus-advertisement case decided shortly after this Court issued the initial Opinion.  See Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp. (SMART), 698 F.3d 885 (6th Cir. 2012).  Following AATA's adoption of the revised policy, this Court concluded that, at a minimum, it was appropriate to order AATA to reconsider Plaintiff's ad under the new policy, while noting that additional relief requested by Plaintiff – ordering AATA to run his ad – might later be granted.  Order (Dkt. 62).  Because AATA proceeded to reject Plaintiff's ad under the revised policy based on two provisions – one of which was the "no political ads" provision – the Court now considers whether further preliminary injunctive relief is required.

As the Court will discuss in detail below, events that occurred after the issuance of the initial Opinion have dramatically changed the legal landscape.  The policy that Plaintiff initially challenged has been significantly changed.  And the new policy has also changed the forum, for purposes of the First Amendment, from a "designated public forum" – where content-based restrictions typically fail under strict scrutiny – to a "limited public forum" or "nonpublic forum" – in which the "no political ads" restriction, invoked by AATA in its renewed rejection of the ad, has been found constitutionally sound.[1]  Further, with AATA's invocation of the "no political

_____

[1] Courts have interchangeably characterized a forum that limits subjects or speakers as both a "limited public forum," see, e.g., Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106 (2001) and a "nonpublic forum."  See, e.g., Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985).  The Sixth Circuit has noted this inconsistent use of nomenclature. United Food & Commercial Workers Local 1099 v. City of Sidney, 364 F.3d 738, 750 n.3 (6th Cir. 2004).  The Sixth Circuit has explained that regardless of whether a forum is labeled a "limited public forum" or "nonpublic forum," "the result [of the constitutional analysis] would be the same, because government limitations on speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny."  Miller v. City of Cincinnati, 622 F.3d 524, 535-536 (6th Cir. 2010).  "In both instances, any restrictions must be reasonable and viewpoint neutral."  Id. at 536.

In the initial Opinion, the Court used the term "limited public forum" in conformity with Good

ads" provision, Plaintiff's ad now stands rejected on a basis against which Plaintiff cannot mount a successful facial challenge.   As a consequence, Plaintiff's challenge to the request for additional preliminary injunctive relief based on a challenge to AATA's policy and the rejection of Plaintiff's ad are now moot, because they present no ongoing constitutional violation or threat of harm.  While Plaintiff suspects that AATA's revised policy and recent rejection of his ad are the product of actual viewpoint discrimination, Plaintiff's motion as presently framed and supported does not properly raise that issue.  Accordingly, the Court will deny any additional preliminary injunctive relief at present.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Because the Court's initial Opinion set out in detail the relevant factual and procedural background to this case, only a brief recitation of the background is necessary here.

Plaintiff submitted a proposed advertisement, critical of Israel, for placement on AATA buses.   AATA rejected the ad on the grounds that it violated two provisions of AATA's advertising policy: a provision requiring that all advertising be in "good taste," and a provision barring advertising that "[d]efames or is likely to hold up to scorn or ridicule a person or group of persons."  Advertising Policy (Dkt. 3-21).

In his injunction motion challenging that rejection, Plaintiff raised the following issues:

- The provision requiring that ads be "in good taste and "uphold the aesthetic standards as determined by AATA" is facially unconstitutional on vagueness grounds.

---

News Club, as did the parties.  Def. Resp. to TRO Mot. at 7-8 (Dkt. 19) (using the term "limited public forum"); Pl. Rep. to TRO Mot. at 1 n.1 (Dkt. 26) (arguing that the terms "limited public forum" and "nonpublic forum" are interchangeable).   However, because the SMART court utilized the term "nonpublic forum" in conducting a forum analysis of a transit advertising forum that limited subject matter, the Court will use that term in its analysis of the AATA advertising space.

- The "scorn or ridicule" provision was facially unconstitutional because AATA's advertising space is a designated public forum, in which rejection of Plaintiff's ad on content grounds violates the First Amendment.

- Even if AATA's advertising space is not a designated public forum, the "scorn or ridicule" provision is facially unconstitutional because it is not viewpoint neutral.

- The portion of the advertising policy that prohibits ads that are "likely to hold up to scorn or ridicule a person or group of persons" is unconstitutionally vague as applied because the decision to include Israel as a "group of persons" was based on an insufficiently clear standard.

The Court issued its initial Opinion (Dkt. 59) granting Plaintiff's motion for injunctive relief. The Opinion concluded that Plaintiff had established a likelihood of succeeding on the merits with respect to the following:

- The "good taste" provision of the advertising policy was unconstitutionally vague.

- The AATA bus advertising space was a designated public forum under United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority, 163 F.3d 341 (6th Cir. 1998) because the policy's "good taste" provision was unconstitutionally vague.

- In such a designated public forum, the appropriate test was strict scrutiny, which the "scorn or ridicule" provision could not meet because it was a content-based restriction. Op. at 25-34 (Dkt. 59).

The Court also concluded that the remaining preliminary injunction factors weighed in favor of granting preliminary injunctive relief to Plaintiff. Id. at 37-38. Finally, the Court ordered additional briefing on the issue of what preliminary injunctive relief would be appropriate. Id. at 38-39.[2]

Before the additional briefing was completed, the Sixth Circuit issued the SMART decision. In SMART, the district court had enjoined a public transit authority from banning an

---

[2] The Court did not reach the issue of whether the "scorn or ridicule" provision was, on its face, viewpoint discriminatory. Id. at 29. Nor did it address whether the decision to characterize Israel as a "group of persons" was based on an unconstitutionally vague standard. Id. at 29 n.15.

ad critical of Islam under a policy prohibiting political ads.  The Sixth Circuit reversed, holding

that such a ban was not an unconstitutional restriction on speech because the advertising space

was a nonpublic forum, and because the exclusion of political ads was reasonable and viewpoint

neutral.

On December 6, 2012, AATA notified the Court that AATA had amended its advertising

policy in response to SMART (Dkt. 61).  The new policy reiterated the old policy's stated intent

not to create a public forum.  But it broke new ground by deleting the "good taste" provision – in

accordance with the Court's prior ruling finding that provision unconstitutional – and by adding

a ban on "political or political campaign advertising" – the identical provision that the SMART

decision had recently found constitutional.[3]  On December 17, 2012, the Court issued an order

---

[3] The revised policy states (with deleted language indicated by a strike-through and added
language in bold) :

> A. The AATA, by permitting commercial advertising in or on its vehicles,
> shelters, informational material, buildings, and benches, does not thereby intend
> to create a public forum.  Further, AATA requires that such advertising comply
> with specified standards to further the purposes of providing revenue for AATA,
> increasing ridership, and assuring that AATA riders will be afforded a safe and
> pleasant environment.  AATA reserves the right to approve all advertising, exhibit
> material, announcements, or any other display and their manner of presentation.
> ~~All advertising must be in considered in good taste and shall uphold the aesthetic
> standards as determined by AATA.~~

> B. **In order to minimize the chances of abuse, the appearance of favoritism,
> and the risk of imposing upon a captive audience,** advertising in or on AATA
> vehicles, in AATA shelters, buildings, benches or informational material which
> does any of the following shall be prohibited.

> 1. Contains false, misleading, or deceptive material.
> 2. Promotes and [sic] illegal activity.
> 3. Advocates violence or crime.
> 4. Infringes copyright, service mark, title or slogan.
> 5. Defames or is likely to hold up to scorn or ridicule a person or group of
>    persons.
> 6. State or implies the endorsement of a product or service by AATA.

5

requiring AATA to reconsider Plaintiff's ad under the revised policy (Dkt. 62).[4]  On January 4,

2013, AATA notified the Court that it had reconsidered Plaintiff's ad and had rejected it under

the revised policy, invoking both the new "no political ads" provision and the "scorn or ridicule"

provision, as independent grounds (Dkt. 63).[5]

---

7. ~~Supports or opposes the election of any person to office or supports or opposed any ballot proposition.~~ **Contains political or political campaign advertising.**

8. ~~Contains material which is obscene, as defined by MCL 752.362 or sexually explicitly, as defined by MCL 722.673, and as such statutes shall be amended or supplemented.~~ **Contains advertising that is obscene or pornographic, or in advocacy of imminent lawlessness or violent action.**

9. Promotes alcohol or tobacco products.

Notice of Revised Policy at 4 of 4 (CM/ECF pagination) (Dkt. 61).

[4] The Court's action was taken in light of authorities holding that it is appropriate for a court to afford a government actor the opportunity to reconsider speech that was rejected under a prior, unconstitutional policy.  See Op. at 39 (citing McCollum v. City of Powder Springs, Ga., 720 F. Supp. 985, 990 (N.D. Ga. 1989) ("The Court will issue an order enjoining the City Council from failing to issue a . . . license to plaintiffs unless defendant amends its ordinance so that it is constitutionally valid and acts upon plaintiffs' application pursuant to the amended ordinance . . . .") (emphasis in original)).

[5] AATA's resolution rejecting the proposed ad states, in pertinent part:

> NOW, THEREFORE, BE IT RESOLVED, that the Board hereby REJECTS Mr. Coleman's proposed advertisement because it violates paragraph B.5 of the revised Advertising Policy, i.e. the proposed advertisement "Defames or is likely to hold up to scorn or ridicule a person or group of persons."  The placement of quotation marks around the word "Israel" implies that Israel does not exist. Further, the graphic combined with the text of the proposed advertisement holds a group of people up to scorn and ridicule.

> BE IT FURTHER RESOLVED, that without regard to paragraph B.5 and as an independent basis for its decision, the Board of Directors hereby REJECTS Mr. Coleman's proposed advertisement because it violates paragraph B.7 of the revised Advertising Policy, i.e. the proposed advertisement "Contains political or political campaign advertising."

6

Following AATA's reconsideration of Plaintiff's proposed ad, the Court conducted a status conference, and subsequently issued an order (Dkt. 65) for an additional round of supplemental briefing, addressing "the impact, if any, of AATA's adoption of a revised policy and rejection of Plaintiff's ad on Plaintiff's request for further preliminary injunctive relief in the form of an order to run Plaintiff's advertisement."  The parties filed supplemental briefs on this issue (Dkts. 66, 67), which the Court has reviewed.

### III.  ANALYSIS

#### A. Parties' Arguments

Plaintiff effectively concedes that, under <u>SMART</u>, the "no political ads" provision invoked by AATA is a constitutionally sound basis for rejecting an ad.  Pl. Second Supp. Br. at 1 (Dkt. 67).  However, he claims that, in the context of the instant case, AATA's adoption of that policy should not dissuade this Court from ordering AATA to run his ad because AATA's action is simply a post-hoc rationalization of its hostility to Plaintiff's message.  <u>Id.</u> at 1-2.  In other words, Plaintiff argues that, in adopting the new policy, AATA was motivated by actual viewpoint discrimination.  <u>Id.</u> at 3-4.  Plaintiff also argues that the Court should order AATA to run the ad to avoid creating a "perverse" incentive for a government to adopt intentionally unclear standards to block unpopular messages on the theory that the government might cynically determine that, if it is sued, it would simply revise the policy to a facially neutral one. Pl. Supp. Br. at 8-9 (Dkt. 52); Pl. Second Supp. Br. at 8-9 (Dkt. 67).  In addition, he argues that, without the reward of having his ad run, he will be "chilled" in the exercise of his First

---

BE IT FURTHER RESOLVED, the Board regards the violation of paragraph B.5 and the violation of paragraph B.7 as separate and independently sufficient bases for rejecting the proposed advertisement.

Resolution at 3 of 5 (CM/ECF pagination) (Dkt. 63).

Amendment rights.  Pl. Supp. Br. at 9; Pl. Second Supp. Br. at 8-9.

In response, AATA argues that ordering it to reconsider Plaintiff's ad under the revised policy was sufficient injunctive relief.  Def. Supp. Br. at 3-4 (Dkt. 54); Def. Additional Supp. Br. at 2 (Dkt. 66).  AATA maintains that government agencies are free to change the nature of the forums that they create.  The <u>SMART</u> decision establishes that a transit-advertising forum, like the one re-formulated by AATA through the adoption of its revised policy, creates a nonpublic forum, where a viewpoint-neutral provision – such as the "no political ads" provision – is a constitutionally sound basis for rejecting an ad such as Plaintiff's.  Given that the forum has been changed through adoption of a constitutionally sound policy, there is no ongoing constitutional violation or threat of harm, rendering Plaintiff's request for further relief moot.  Def. Additional Supp. Br. at 4-6.  AATA further argues that post-hoc rationalization plays no part here because AATA is not seeking to re-characterize or justify, after the fact, its initial decision to reject the ad; instead, it seeks for the Court to consider the policy as it currently exists.  Def. Additional Supp. Br. at 4.

For the reasons set forth in greater detail below, the Court agrees with AATA, concluding that, on this record, there is no ongoing constitutional violation or imminent threat of harm, rendering Plaintiff's claim for further preliminary injunctive relief, as presently framed in his motion, moot.[6]

**B.  Mootness**

As a matter of traditional equity principles, a preliminary injunction is proper where there

---

[6] As the Court will discuss below, the Court does not address the merits of Plaintiff's claim regarding the "scorn or ridicule" provision because Plaintiff has not made sufficient allegations demonstrating that he has standing to make that claim. The Court will also not address the merits of any contention of actual viewpoint discrimination because Plaintiff's motion was not based on that claim, and the factual development on that issue is insufficient.

is an "ongoing violation" of a claimant's rights.  Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2003).  Preliminary injunctive relief is also appropriate "to forestall future violations." United States v. Oregon State Med. Soc'y, 343 U.S. 326, 333 (1952).  However, a preliminary injunction will not be awarded to prevent a claimed future injury that is remote or speculative; instead, the plaintiff seeking a preliminary injunction must demonstrate that he or she is likely to suffer harm before the court can issue a decision on the merits.  See Winter v. Nat'l Res. Def. Council, 555 U.S. 7, 22 (2008) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1 (2d ed. 1995)).  Therefore, a plaintiff seeking preliminary injunctive relief must establish ongoing or imminent future harm; a claim limited to past injury is insufficient.  See Friends of Tims Ford v. Tenn. Valley Auth., 585 F.3d 955, 970-971 (6th Cir. 2009).

Where a federal court is asked to issue injunctive relief, a jurisdictional limitation also comes into play.  The Supreme Court has explained that there must exist "a live case or controversy at the time that a federal court decides the case."  Burke v. Barnes, 479 U.S. 361, 363 (1987) (emphasis added).  In the absence of a "live case or controversy," the mootness doctrine is triggered, and the constitutional requirements for justiciability cannot be met.  Ky. Right to Life, Inc. v. Terry, 108 F.3d 637, 644 (6th Cir. 1997) ("The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case." (citation omitted)).  Thus, if legislation challenged as unconstitutional is repealed or materially modified during the course of the litigation, the constitutional claim may well be moot.  Id. ("Legislative repeal or amendment of a challenged statute while a case is pending . . . usually eliminate this requisite case-or-controversy because a statute must be analyzed by the [] court in its present form." (citations omitted)).

The Sixth Circuit's decision in <u>Bench Billboard Company v. City of Cincinnati</u>, 675 F.3d 974 (6th Cir. 2012), illustrates these principles in the First Amendment context.  In <u>Bench Billboard</u>, the court concluded that the plaintiff's claims for injunctive and declaratory relief based on a challenge to a city ordinance were moot, where the defendant implemented an entirely new statutory scheme after litigation had commenced.  The plaintiff had brought suit challenging the city's restrictions limiting access to advertising space on bench billboards and granting the city manager unbridled discretion to grant waivers of the restrictions.  <u>Id.</u> at 978.  The district court concluded that the plaintiff sufficiently pled its claim that the challenged ordinance was invalid under the First Amendment and the equal protection clause.  <u>Id.</u>  After the entry of the district court's order, the city amended its ordinance several times, including an amendment that deleted the challenged language and prohibited advertising on benches in the public rights-of-way.  <u>Id.</u> at 979.  On appeal, the Sixth Circuit concluded that the amendment that deleted the challenged language mooted the plaintiff's First Amendment claim.  <u>Id.</u> at 981.  The court explained that the "new ordinance constitutes an entirely new statutory scheme and prohibits bench billboards and other forms of advertising in the rights-of-way altogether."  <u>Id.</u>

The same mootness principle was invoked in <u>Miller v. City of Cincinnati</u>, No. 08-550, 2012 WL 3962787, at *7 (S.D. Ohio Sept. 11, 2012), where the plaintiffs brought a challenge to the city's policy requiring that a party seeking to hold rallies or press conferences in the city hall be "sponsored" by certain city officials.  The district court found the sponsorship requirement unconstitutional and was affirmed in that regard on appeal.  After remand, the city eliminated the sponsorship requirement and closed the interior of city hall to all rallies, press conferences, or other public events.  When the plaintiffs sought an order requiring the city to allow them to hold a rally or press conference inside city hall, the district court rejected the claim based on

mootness.  In doing so, it stressed the courts' general receptivity to mootness-based dismissals resulting from governmental self-correction of constitutional errors:

> [T]he Sixth Circuit has noted that the "cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties" and that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine."

Id. (quoting Mosley v. Hairston, 920 F.2d 409, 415 (6th Cir. 1990)).[7]

These authorities teach that mootness is triggered where the mid-litigation governmental self-correction materially changes the legal controversy confronting the court.  As the Sixth Circuit recently framed it in a case where legislative amendments to the challenged election statute, while the appeal was pending, mooted the constitutional attack: "[T]he key question is therefore whether the challenged legislation has been sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided."  Green Party of Tenn. v. Hargett, 700 F.3d 816, 823 (6th Cir. 2012) (citations and quotation marks omitted).

In light of the above case law, the issue here is whether AATA's advertising policy has been sufficiently altered so as to present a substantially different controversy from the one previously before this Court.  The Court concludes that this has unquestionably occurred.

In revising its transit advertising policy, AATA changed its forum from a designated

---

[7] Other circuits have also invoked the mootness doctrine in the context of legislation modified during the course of litigation.  See, e.g., Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1031-1032 (9th Cir. 2006) (concluding that amendments to a street banner ordinance mooted the challenge to the original ordinance, which had permitted some types of private speech, where the amendments "preclud[ed] all private parties from putting up street banners" and "closed the designated public forum in which appellants sought to exercise their rights"); Nat'l Adver. Co. v. City & Cnty. of Denver, 912 F.2d 405, 412 (10th Cir. 1990) (amendments to an ordinance mooted a challenge to the original ordinance, where the new ordinance would allow the city to immediately revoke any permits to which the plaintiffs may have been entitled prior to the amendments).

public forum to a nonpublic forum by deletion of the unconstitutionally vague "good taste" provision.  As this Court had previously explained, that provision alone led the Court to characterize the forum as a designated public forum.  See Op. at 25.  This Court concluded that United Food mandated a finding of designated public forum because of the inclusion of that standardless provision in AATA's policy, even though all the evidence presented argued for the conclusion that only a limited public forum had been intended.  See Op. at 25-26.  With the deletion of the "good taste" provision, the forum has been converted to a nonpublic forum, thereby fundamentally changing the legal landscape of this case.[8]

With the forum change, AATA adopted a revised transit advertising policy – with a provision prohibiting political ads – which the Sixth Circuit has expressly found to be constitutional.  And AATA has invoked that indisputably constitutional provision in rejecting Plaintiff's ad for a second time.  Whereas the first rejection of Plaintiff's ad was based on an unconstitutionally vague "good taste" provision and a constitutionally untested "scorn or ridicule" provision, AATA has utilized a provision for the second rejection that was expressly approved by the Sixth Circuit.  The controversy has, therefore, significantly evolved in that the policy provision invoked by AATA is not vulnerable to any facial challenge by Plaintiff.[9]

---

[8] This Court's prior conclusion that, but for the vague "good taste" provision, it would have found the forum to be a limited public forum, is consistent with the analysis employed in SMART.  This Court, like the SMART court, reviewed the efforts to enforce the policy's restrictions on content and the intent to promote the commercial interests of the enterprise, in reaching the conclusion that the government actor did not intend to create a public forum. Compare Op. at 26 ("[T]he policy excluded campaign ads and ballot issue ads, indicative of an intent to enhance commercial interests, rather than open the forum to a far greater variety of ads.") with SMART, 698 F.3d at 892-893 ("It was reasonable for SMART to focus on longer-term commercial advertising in an effort to boost revenue instead of short-term political advertisements that might alienate riders.  SMART reasonably concluded that permitting any political advertisement could interfere with the forum's revenue-generating purpose.").

[9] Plaintiff does not take issue with the Sixth Circuit's ultimate conclusion that the "no political

With the significant new developments of a forum change and a second rejection based on a constitutionally unassailable provision, there is no ongoing or threatened constitutional violation of Plaintiff's First Amendment rights. The old policy and the first rejection – the basis for Plaintiff's motion – have been fully eclipsed. Neither they nor the new policy and new rejection constitute an ongoing or threatened constitutional violation of Plaintiff's First Amendment rights. Plaintiff's request for further preliminary injunctive relief has, therefore, been rendered moot.

### C. Plaintiff's Arguments of Post-Hoc Rationalization and Actual Viewpoint Discrimination

Plaintiff does not squarely contest this mootness analysis. Instead, he argues that, while the "no political ads" provision may be facially constitutional, there is too strong a risk, in the context of this case, that AATA has engaged in post-hoc rationalization to censor speech. Pl. Supp. Br. at 1-2 (Dkt. 67). According to Plaintiff, post-hoc rationalization raises the risk that AATA chose to adopt a facially neutral policy to "mask its desire to suppress unpopular expression." Id. at 2. Plaintiff contends that "if the permissible reasons for restricting speech are not limited to policies that exist in advance, it is far too easy for the government to manipulate policies and explanations post hoc and evade judicial scrutiny . . . ." Id. at 3.

However, courts that have raised the concern of "post-hoc rationalization" have done so in contexts far different from the context of this case. For example, the Supreme Court addressed "post-hoc rationalization" in City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 758 (1988), a case relied on by Plaintiff. In Lakewood, a city ordinance gave

---

ads" provision is facially constitutional, or any of its subsidiary determinations of viewpoint neutrality and that the provision is reasonably related to the purposes of the forum. See SMART, 698 F.3d at 892-897. Instead, Plaintiff purports to distinguish this case on other bases, discussed below.

unbridled discretion to the mayor to issue permits for placement of newsracks on public property. The Court struck down the ordinance because, without objective standards for determining whether a permit should be issued, impermissible message-based rejections could be disguised by reasons that would appear neutral on their face:

> Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.

Id. at 758. In this case, however, AATA's second rejection of Plaintiff's ad was not standardless. It was premised on the "no political ads" provision, which the Sixth Circuit expressly found contained appropriately definitive standards. See SMART, 698 F.3d at 893 (The prohibition against political ads "is not so vague or ambiguous that a person could not readily identify the applicable standard. . . . [T]here is no question that a person of ordinary intelligence can identify what is or is not political." (citation and quotation marks omitted)).

Courts have also expressed "post-hoc rationalization" concerns where the government offers a reason for its challenged action that was not invoked prior to the initiation of litigation. For example, in Pittsburgh League of Young Voters v. Port Authority of Allegheny County, 653 F.3d 290, 296 (3d Cir. 2011), a case relied on by Plaintiff, the court of appeals sustained the district court's finding that the transit authority had improperly rejected the plaintiff's ad based on viewpoint discrimination. In doing so, the court of appeals upheld the district court's rejection of the authority's invocation of a provision prohibiting political ads – a provision that had been in the policy, but had not been previously asserted by the authority when the ad was rejected – based on grounds of "post-hoc rationalization." Here, however, AATA is not assigning a new ground for its prior rejection of Plaintiff's ad. Rather, it has amended its policy

by adopting a new provision that was expressly approved by an intervening appellate court decision, and it has rejected the ad anew based on the modification to the policy.  Furthermore, the new policy must be applied to all potential advertisers, not simply to a current litigant. Therefore, adopting a new, constitutionally sound policy does not generally raise the concern underlying post-hoc rationalization: that the true basis for a prior decision has been masked by an insincere re-characterization of the prior governmental action.[10]

Moreover, a finding of "post-hoc rationalization" without evidence of actual viewpoint discrimination would run counter to established First Amendment doctrine allowing governments to change the nature of the forums they create.  The Supreme Court has long recognized that a government may change the nature of a forum.  See, e.g., Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983) ("[A] state is not required to indefinitely retain the open character of the [designated public forum]."); Cornelius v. NAACP Legal Def. and Educ. Fund, Inc., 473 U.S. 788, 802 (1985) (quoting Perry).  The principle has been expressly recognized in the transit advertising context.  See, e.g., Am. Freedom Def. Initiative v. Metro. Transp. Auth., 889 F. Supp. 2d 606, 612 (S.D.N.Y. 2012) ("New regulations may, for example, change the character of the advertising forum and/or the rules applicable to [the plaintiff's]'s Ad, and thereby transform the First Amendment analysis."); Ridley v. Mass. Bay

---

[10]  In support of his post-hoc rationalization argument, Plaintiff also cites Air Line Pilots Association v. City of Chicago, 45 F.3d 1144, 1153 (7th Cir. 1995) and Bouie v. City of Columbia, 378 U.S. 347 (1964), but both are distinguishable.  In Air Line Pilots,  the Seventh Circuit stated, "The government may not 'create' a policy to implement its newly-discovered desire to suppress a particular message."  45 F.3d at 1153.  The court's statement means only that courts should scrutinize the consistency of policy enforcement in determining whether the government has acted to suppress a particular message.  The court did not purport to announce a rule of dispositive skepticism that would bar every mid-litigation policy change a government agency enacts.  In Bouie, the Supreme Court held that the retroactive judicial expansion of a criminal statute violated the due process rights of criminal defendants by depriving them of their right to "fair warning" of prohibited criminal conduct, 378 U.S. at 354-355; such a rule has nothing to do with a change in civil rules governing transit advertising.

Transp. Auth., 390 F.3d 65, 77 (1st Cir. 2004) ("The government is free to change the nature of any nontraditional forum as it wishes." (citing Cornelius)).

In a dynamic society, a government must be free to expand and contract the venues it creates to account for evolving circumstances.  Over time, changes in tastes, cost constraints and alternative vehicles of expression may counsel closure or modification of government-sponsored venues.   In the transit context, in particular, changing customer reactions to certain kinds of advertising may counsel avoidance of certain categories of ads to prevent customer dissatisfaction and abandonment of the forum.   See Am. Freedom Def. Initiative v. Metro. Transp. Auth., 880 F. Supp. 2d 456, 477-478 (S.D.N.Y. 2012) (recognizing that a transit authority should have "the latitude to investigate and experiment with alternative mechanisms for using ad space on the exteriors of city buses productively, profitably, and constitutionally, while ensuring that this space is not used as a tool for disparagement and division").

It is true that changes to a forum motivated by actual viewpoint discrimination may well limit the government's freedom of action.   See, e.g., United States v. Griefen, 200 F.3d 1256, 1265 (9th Cir. 2000) ("Should it appear that the true purpose of . . .  an order [closing a forum] was to silence disfavored speech or speakers, or that the order was not narrowly tailored to the realities of the situation, or that it did not leave open alternative avenues for communication, the federal courts are capable of taking prompt and measurably appropriate action."); Thomason v. Jernigan, 770 F. Supp. 1195, 1201 (E.D. Mich. 1991) (a city's vacation of a public right-of-way was not content-neutral, where the city closed the right-of-way in response to protests against a Planned Parenthood clinic).  But the government's presumptive right to change the nature of a forum in the absence of actual viewpoint discrimination is well recognized.

While post-hoc rationalization is a valid concern where a plaintiff claims to have been the

victim of actual viewpoint discrimination, the motion that Plaintiff filed was not framed as a challenge based on actual viewpoint discrimination.  Rather, it was framed as a facial challenge to the "good taste" and "scorn or ridicule" provisions of the policy.  Because Plaintiff did not allege actual viewpoint discrimination in his motion, the Court is justified in resisting Plaintiff's efforts to raise this issue as a mid-course correction in later briefing.  See Barr v. Lafon, 538 F.3d 554, 577 (6th Cir. 2008) ("[B]ecause Plaintiffs-Appellants failed to develop adequately this issue in their opening brief, we do not consider it."); United States v. Wyatt, 189 F. App'x 418, 422 (6th Cir. 2006) ("[Appellant] did not raise this argument in his opening brief and this court will not consider issues raised for the first time . . . in a party's reply brief.").

Furthermore, there has been insufficient factual development on the issue of actual viewpoint discrimination.  Notably, there has been no evidence submitted that the second rejection was motivated by actual viewpoint discrimination.  And the evidence adduced at the July 2012 evidentiary hearing as to the motivation for the first rejection is subject to varying interpretations.[11]  Plaintiff may be correct that he would be entitled to further preliminary

---

[11] Following the July 2012 evidentiary hearing, Plaintiff argued that the testimony of AATA Chairman Jesse Bernstein, regarding the quotation marks around the word "Israel" in Plaintiff's ad, indicated that Bernstein engaged in actual viewpoint discrimination.  Pl. Post-Hearing Br. at 10 (Dkt. 46).  At the hearing, Bernstein testified that he believed the ad violated the "scorn or ridicule" provision based on "the fact that Israel is in quotes." Hr'g Tr. at 209.  He further testified, "To me the quotes imply Israel doesn't exist, that it somehow demeans that group of people that are citizens of that country . . . . [I]t defamed or held people up to scorn implying that Israel does not exist."  Id. at 210-211.  This testimony does not necessarily indicate that Bernstein sought to suppress the ad based on hostility to the viewpoint in its message; Bernstein may only have meant to explain how the quotation marks around the word "Israel" could be deemed scornful or ridiculing under the AATA policy.  Without greater factual development, including testimony from those who participated in the rejection decision, the Court cannot find that there is presently any evidence – much less, persuasive evidence – of actual viewpoint discrimination.

The inconclusive nature of this testimony is understandable, when it is recalled that the evidentiary hearing was not designed to explore any claim of actual viewpoint discrimination.

injunctive relief if he could establish actual viewpoint discrimination in AATA's second rejection of his ad, but that issue may only be addressed if Plaintiff raises it in a new motion or at trial.

### D.  Plaintiff's Arguments on "Perverse" Incentives and Chilling Effects

Plaintiff argues that AATA must be ordered to run his ad to avoid creating a "perverse" incentive to adopt policies with unclear standards.  Plaintiff's theory is that, if the government can simply change its unclear policy to a constitutionally sound one after it is sued, it will have no incentive to adopt a policy with clear standards from the outset.

Plaintiff's argument, however, ignores several factors that provide powerful incentives for creating constitutional policies at the outset.  Litigation distracts government decision-makers and personnel from their core mission, while attendant defense costs sap strained budgets. Liability for damages, costs and attorney fees under 42 U.S.C. §§ 1983, 1988 creates another tangible disincentive to intentional unconstitutional action.  Furthermore, a government's effort to disguise actual viewpoint discrimination using a shell-game of unclear standards replaced by a facially neutral policy would likely trigger an as-applied challenge, where a "make-whole" remedy, in the form of an order to run a previously prohibited ad, might well be available.  See Squires v. Bonser, 54 F.3d 168, 171-172 (3d Cir. 1995) (a federal court has the equitable power to order "make-whole" relief in First Amendment cases brought under 42 U.S.C. § 1983). Therefore, Plaintiff's "perverse" incentives argument is not well-taken.

---

The purpose of the evidentiary hearing, conducted prior to the policy revision, was to determine which provision of the original policy was the reason for rejection of Plaintiff's ad, there having been a dispute in the opening briefs as to whether the "good taste" provision had been invoked along with the "scorn and ridicule" provision (as claimed by Plaintiff) or just the latter provision (as claimed by Defendants).  Its purpose was not to explore actual viewpoint discrimination. Indeed, the first mention of actual viewpoint discrimination in connection with Plaintiff's motion came in Plaintiff's post-hearing brief.  Pl. Post-Hearing Br. at 8.  This may well explain the spotty nature of the evidence developed on that issue.

Nor is his argument on the chilling of First Amendment rights.  Plaintiff argues that, if AATA is not ordered to run his ad, then plaintiffs like him "would have no incentive to challenge the arbitrary or viewpoint-based censorship of their speech."  Pl. Second Supp. Br. at 8-9.  But Plaintiff has such an incentive if he can properly allege actual viewpoint discrimination because such a claim may well support entitlement to a make-whole remedy in the nature of an order to run a previously barred ad.  Even in the absence of a claim for actual viewpoint discrimination, recovery of damages and reimbursement of litigation costs coupled with the personal satisfaction of dismantling an unconstitutional policy would likely provide sufficient motivation for a civic-minded plaintiff to make a facial challenge.  Thus, Plaintiff's fear that his First Amendment rights will be "chilled" is without foundation.

### E.  Plaintiff's Challenge to the "Scorn or Ridicule" Provision

 Nor can Plaintiff breathe life into his request for additional preliminary relief by mounting a challenge to the "scorn or ridicule" provision, the additional basis invoked by AATA in rejecting Plaintiff's ad.  Plaintiff has not made sufficient allegations to demonstrate that he has standing to make such a challenge.

The constitutional standing doctrine requires a plaintiff to show that he has (i) suffered an injury, (ii) that is fairly traceable to the defendant's allegedly unlawful conduct, and (iii) that is likely to be redressed by the requested relief.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  A plaintiff challenging a law or policy under the First Amendment must meet these standing requirements.  Midwest Media Prop., LLC v. Symmes Twp., Ohio, 503 F.3d 456, 464 (6th Cir. 2007).  Furthermore, a plaintiff bringing a constitutional challenge against independent provisions of a government enactment must show standing with regards to each provision that is challenged.  See Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 350 (6th Cir. 2007)

(plaintiff's standing with regard to one element of an ordinance "does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions"); <u>Covenant Media of SC, LLC v. City of North Charleston</u>, 493 F.3d 421, 429-430 (4th Cir. 2007) ("Although there is broad latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." (citations and quotation marks omitted)).

Plaintiff has not demonstrated that he was injured by the application of the "scorn or ridicule" provision. AATA's notice of reconsideration of Plaintiff's ad stated that the ad was rejected on two "separate and independently sufficient bases": the ban on political ads and the "scorn or ridicule" provision. Notice at 3 of 5 (Dkt. 63). That is, Plaintiff's ad would have been rejected based on the "no political ads" provision, even if the "scorn or ridicule" provision had not been retained as part of the new policy. <u>See</u> <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 285-286 (1977) (holding that a governmental action will be upheld if there is a constitutional basis for the action, even if a possible unconstitutional factor also contributed to the government's decision); <u>Texas v. Lesage</u>, 528 U.S. 18, 21 (1999) ("Simply put, where a plaintiff challenges a discrete governmental decision as being based on an impermissible criterion and it is undisputed that the government would have made the same decision regardless, there is no cognizable injury warranting relief under §1983."). While Plaintiff may yet make allegations that would provide a basis for his standing to challenge that provision, he has not done so yet. Thus, currently Plaintiff has no standing to mount a challenge to the "scorn or

ridicule" provision.[12]

## IV.   CONCLUSION

In sum, the Court concludes that AATA's revision of its advertising policy and rejection of Plaintiff's ad on a facially neutral basis eliminated any ongoing or threatened constitutional violation.  Because there is no constitutional violation to correct or prevent, Plaintiff's request for further preliminary relief, in the context of his motion as presently framed, is moot. Furthermore, because Plaintiff has not alleged facts demonstrating that he has standing to challenge the "scorn or ridicule" provision – the alternative basis for the rejection of his ad – it would not be appropriate for the Court to address the constitutionality of that provision. Therefore, the Court denies further preliminary injunctive relief, based on the current record. [13]

The Court will conduct an in-person status/scheduling conference in this matter on June

---

[12] In Plaintiff's first supplemental brief (Dkt. 52), filed before SMART was issued, Plaintiff argues that courts have recognized a third-party standing doctrine in the First Amendment context, in which "relief must be given even to persons whose own speech could be validly proscribed were the relevant policy more narrowly crafted."  Pl. Supp. Br. at 8.  In support of his argument, Plaintiff cites Bigelow v. Virginia, 421 U.S. 809, 816 (1975) and Sec'y of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 956-957 (1984).  This argument does not alter the Court's standing analysis.

The third-party doctrine to which Plaintiff refers allows parties to challenge a statute based on a belief that the statute is so overbroad or vague that it will chill protected speech.  See Joseph H. Munson Co., 467 U.S. at 956-957; Bigelow v. Virginia, 421 U.S. at 815-816. The doctrine stems from a "lessening of prudential limitations on standing" in the First Amendment context.  Joseph H. Munson Co., 467 U.S. at 956.   However, as the Sixth Circuit has explained, although the prudential limitations on standing are reduced in the First Amendment context, the constitutional limitations on standing – including the requirement of injury-in-fact – must be met.   Savage v. Gee, 665 F.3d 732, 740 (6th Cir. 2012).  As the Court has explained, Plaintiff has not shown that he suffered an actual injury resulting from AATA's application of the "scorn or ridicule" provision.  For this reason, Plaintiff lacks standing to challenge that provision.

[13] Defendants filed a motion for leave to file a response to Plaintiff's supplemental brief regarding further preliminary injunctive relief (Dkt. 68).  Plaintiff filed a response opposing Defendant's motion (Dkt. 69).  The Court issued a notice of determination of the motion without oral argument (Dkt. 70).  The Court grants the motion to allow a full discussion of the authorities relied on by the parties.

12, 2013, at 1:30 p.m., at the United States Courthouse in Flint, Michigan.

       SO ORDERED.


Dated:  June 4, 2013                  s/Mark A. Goldsmith
      Flint, Michigan            MARK A. GOLDSMITH
                                United States District Judge

## CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 4, 2013.

                                s/Deborah J. Goltz
                                DEBORAH J. GOLTZ
                                Case Manager